## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16CR336-JAR-2 |
| | ) |
| PIERRE WATSON, | ) |
| | ) |
| Defendant. | ) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter came before the Court for a bench trial on December 5, 2016, after Defendant

Pierre Watson ("Watson") waived his right to a trial by a jury. After conclusion of the evidence,

a transcript was prepared and the parties submitted proposed findings of fact and conclusions of

law. Upon careful consideration of the direct and circumstantial evidence, exhibits, testimony,

and transcripts, the Court hereby supplements its findings on the record with the following

Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1.      On or about November 18, 2015, Defendant was detained at the Jennings

Correctional Facility awaiting trial in criminal case number S3-4:15CR00440 AGF (JMB).[1]

2.      Through a series of telephone calls, notes, and jail visits beginning on March 20,

2016 and continuing until June 16, 2016, Defendant discussed various fraudulent schemes,

including check-kiting, with co-defendant Taion Brown ("Brown").

---

[1] On June 16, 2017, Defendant was sentenced in Case No. 4:15CR00440 to concurrent terms of 60
months on Count 1 (conspiracy to defraud) and 84 months on each of Counts 2 (bank fraud), 8 and 11
(passing counterfeit securities), and 12 (tampering with a witness), for a total term of 84 months, said
term to run consecutive to the sentence to be imposed in this case.

3. In particular, Defendant instructed Brown to open checking accounts at branches of U.S. Bank, Fifth Third Bank, and Bank of America, located in the St. Louis metropolitan area, activate debit cards issued by the banks, and set up personal identification numbers ("PINS"). Trial Transcript ("Tr."), Doc. No. 101 at 30:4-32:13; Ex. 8.01 (compact disc of recorded jail visits at Jail Visit Nos. 10, 15, 60, 74, 93); Ex. 13 ("activate the cards" letter from Watson to Brown). Pursuant to Defendant's instructions, Brown was to draft checks in amounts which exceeded her account balances, and deposit them into accounts at Regions Bank and U.S. Bank. Ex. 13.

4. Watson also directed Brown to recruit other people to help her open checking accounts. Brown followed the direction from Watson and recruited her cousin, co-defendant Justice Carter ("Carter"). Tr. 36:3-21.

5. On March 25, 2016, at the direction of Defendant, Brown opened checking accounts at U.S. Bank and Bank of America with cash deposits of $25.00. Ex. 13; Tr. 28-30.

6. On March 27, 2016, Brown met with Defendant at the Jennings facility. In her possession were bank deposit records and financial documents, including a deposit receipt from Bank of America confirming a cash deposit of $25.00 on March 25, 2016; a U.S. Bank receipt for $25.00; a U.S. Bank account identification card; a Bank of America Direct Deposit Enrollment form for an account ending in 1666 for Brown; and Power of Attorney forms for Defendant. Tr. 10-12; Ex. 8.01 at Jail Visit 15; Ex. 7 (documents Brown brought to Defendant). Defendant explained to Brown that, within the first 30 days of opening an account, the bank would grant her immediate access to the first $200.00 of any check deposits, and the balance of the funds would be made available within three to five days thereafter. Ex. 8.01 at Jail Visit 15.

2

7. On April 2, 2016, pursuant to Watson's instructions, Brown wrote a check payable to herself in the amount of $200.00 from her U.S. Bank account, despite the fact that her account lacked sufficient funds to cover the check, and then deposited it into her Bank of America account. Tr. 35:3-9; Ex. 1.01 (Check No. 98). She then withdrew $200.00 from the Bank of America account, got a money order in that amount, and deposited the money order into her U.S. Bank account. Tr. 35:13-23.

8. On April 7, 2016, Brown and Carter traveled to branches of Regions Bank and Bank of America so that Carter could open checking accounts. Tr. 36:22-25; Ex. 2 (bank records of Justice Carter). The Bank of America account was opened with an initial cash deposit of $25.00; the Regions Bank account was opened with an initial cash deposit of $50.00. Ex. 2 at 1, 18 (Bank of America records for Carter); Ex. 12 at 1, 3, 10, 11 (Regions Bank records for Carter). Upon opening the accounts, Carter drafted a check drawn on her Regions Bank account in the amount of $1,000.00 made payable to Brown. Tr. 37:9-15; Ex. 12.01 (check made payable to Brown). Brown, accompanied by Carter, deposited the check into her U.S. Bank account through an ATM transaction even though Brown and Carter knew Carter's balance in her Regions Bank account was $50.00. Tr. 37:16-38:18; Ex. 3 (U.S. Bank records of Brown); Exs. 3.02, 3.03 (U.S. Bank surveillance photographs); Ex. 3.04 (U.S. Bank ATM transaction detail); Ex. 3.05 (U.S. Bank Image ATM Deposit Ticket); Ex. 3.06 (Regions Bank check made payable to Brown). Immediately after the deposit, Brown withdrew $60.00 from a U.S. Bank branch located in Florissant, Missouri, and $200.00 from a U.S. Bank branch located in St. Louis, Missouri, which resulted in the removal of funds in excess of any legitimate deposits. Ex. 3.00.

9. Also on April 7, 2016, Brown and Carter deposited a $400.00 insufficient funds check drawn on Brown's U.S. Bank account into Carter's Bank of America account. Ex. 2.00 at 6-9; Ex. 3.00 at 1, 17.

10. As a result of the fraudulent deposits, Bank of America and Regions Bank closed Carter's accounts. Ex. 2.00 at 18-19; Ex. 12 at 3, 12.

11. In mid-April 2016, Defendant instructed Brown to contact someone named "Lumpy" who agreed to provide her with additional checks. Tr. 39:14-40:4, 68-69.

12. On April 19, 2016, Brown called Defendant to tell him she had met Lumpy and obtained three checks. Ex. 8.00 at Jail Call 393. Each check bore the name of Dyanthony Owens. Tr. 41:16-18.

13. On April 22, 2016, Brown filled out one of the checks as instructed by Defendant. She made it payable to herself in the amount of $600.00 and signed the name of Dyanthony Owens. Tr. 42:19-43:7, 48:2-5; 49:5-7; Ex. 1.00 at 24, 25; Ex. 1.02 (Check Number 1098). Brown deposited the check into her Bank of America account as instructed by Defendant. Ex. 8.00 at Jail Call 393.

14. Dyanthony Owens testified at trial that he believed his wallet, containing his Bank of America account information, debit card and PIN number, was stolen in April 2015. Tr. 14:23-15:8; 18:11-14; 19:19-21. He further testified that in December 2015, his checking and savings accounts at Bank of America were closed due to fraudulent activity. Tr. 14:1-16:19.

15. With respect to the check dated April 22, 2016 and made payable to Brown in the amount of $600.00, Dyanthony Owens identified his name on the check but was unfamiliar with the address on the check. Tr. 16:5-9. He testified that it was not his signature on the check. Tr.

4

16:12-13; 18:23-25. Dyanthony Owens further testified he did not know Brown or Defendant. Tr. 16:10-11; 20-24; 17:15-19.

16. On August 3, 2016, Defendant was indicted by a federal grand jury on five counts: conspiracy to commit bank and wire fraud, 18 U.S.C. § 1349 (Count I); bank fraud, 18 U.S.C. § 1344 (Counts II, III and IV); and aggravated identity theft, 18 U.S.C. § 1028A (Count V).

17. At trial, Defendant exercised his right not to testify in his own defense and rested his case on the Government's evidence.

## CONCLUSIONS OF LAW

## COUNTS II, III AND IV – BANK FRAUD (18 U.S.C. § 1344)

18. To convict Defendant on Counts II-IV, the Government was required to prove beyond a reasonable doubt that (1) Defendant knowingly executed and attempted to execute a scheme to obtain any of the moneys and funds under the custody and control of a financial institution by means of material false or fraudulent pretenses or false or fraudulent representations; (2) Defendant did so with intent to defraud; and (3) the financial institution was insured by the Federal Deposit Insurance Corporation. See 18 U.S.C. § 1344.

19. The Government presented more than sufficient evidence that Defendant directed and managed a scheme involving banks and checking accounts with the assistance of Brown, Carter, Lumpy, and others. The scheme involved instructing Brown on how to conduct bank transactions which would permit her to obtain funds drawn on accounts that lacked sufficient balances. Brown testified at trial that at Defendant's direction, both she and Carter opened checking accounts at branches of Regions Bank, U.S. Bank and Bank of America with initial cash deposits of $25.00 and $50.00. They deposited checks drawn on accounts with insufficient

5

balances to artificially inflate the account balances at the depositing banks. Brown withdrew funds from the artificially inflated accounts through the passing of checks, counter withdrawals, ATM transactions and debit card purchases.

20.    In addition to Brown's testimony and the recorded jail calls between Defendant and Brown, Defendant instructed Brown in writing:

> "Activate the cards set up your Pin # you got 25 dollars at U.S. bank and bank of america [sic]. Get the starter checks from U.S. Bank take one and make it out to yourself and deposited through the ATM at Bank of america [sic] make it for 250.00 withdrawal the 200 that's available. Make one for $500.00 and deposited through the ATM at Regions and withdrawal the 200 go get a 25 dollar money order from Quick trip or Walmart deposit that through the ATM at U.S. Bank but make the make the amount that ask is being deposited for $250.00 and withdrawal the 200 dollars that's available."

Ex. 13. The Government also introduced into evidence bank records, copies of the actual checks from Brown and Carter's accounts, as well as bank surveillance photos.

21.    Thus, the evidence demonstrates beyond a reasonable doubt a scheme to obtain money from a financial institution through false statements and misrepresentations. See United States v. Whitehead, 176 F.3d 1030, 1034 (8th Cir. 1999) (scheme consisted of the systematic depositing of insufficient funds checks into multiple accounts and drawn on accounts at other banks in order to erroneously inflate the accounts' balances). The Court is not persuaded by Defendant's argument that the actions described were done independently by Brown, without his knowledge. The testimony and jail visit recordings clearly establish Defendant's leadership and direction of Brown and others in the scheme that resulted in the passing of insufficient fund checks on April 2, 2016, April 7, 2016, and April 22, 2016, to obtain money in the custody and control of federally insured financial institutions.

22.    Intent to defraud can be shown by circumstantial evidence. United States v. Blumeyer, 114 F.3d 758, 767 (8th Cir. 1997) ("[T]he government need not prove intent directly;

6

the jury may infer intent to defraud from circumstantial evidence."); see also United States v. Brown, 627 F.3d 1068, 1073 (8th Cir. 2010); United States v. Ervasti, 201 F.3d 1029, 1037 (8th Cir. 2000). Defendant's conduct and the nature of the scheme as described above provides more than substantial circumstantial evidence of the requisite intent to defraud.

23. Lastly, the Court took judicial notice that the banks referenced in this case are FDIC federally insured institutions. Tr. 70:17-25.

24. The Court concludes that the Government has established beyond a reasonable doubt each element of the crime of bank fraud in violation of 18 U.S.C. § 1344, and finds Defendant **GUILTY** on each of Counts II, III and IV of the Indictment.

## COUNT I – CONSPIRACY TO COMMIT BANK FRAUD (18 U.S.C. § 1349)

25. To convict Defendant of conspiracy to commit bank fraud, the Government was required to prove beyond a reasonable doubt (1) the existence of an agreement to achieve an illegal purpose, here, bank fraud; (2) Defendant's knowledge of the conspiracy; and (3) Defendant's knowing participation in the agreement. United States v. Hamilton, 837 F.3d 859, 861 (8th Cir. 2016); United States v. May, 476 F.3d 638, 641 (8th Cir. 2007); 18 U.S.C. § 1349.

26. The agreement may be a tacit understanding rather than a formal, explicit agreement. May, 476 F.3d at 641 (citing United States v. Johnson, 439 F.3d 947, 954 (8th Cir. 2006)). There must be evidence that Defendant entered into an agreement with at least one other person. United States v. Ramirez, 350 F.3d 780, 783 (8th Cir. 2003) (citing United States v. Robinson, 217 F.3d 560, 564 (8th Cir. 2000)). "The conspiracy may be proved through circumstantial evidence and may be implied by the surrounding circumstances or by inference from the actions of the parties." Id. (quoting United States v. Fitz, 317 F.3d 878, 881 (8th Cir. 2003)).

7

27. The Court finds and concludes that the Government proved beyond a reasonable doubt each element of the crime of bank fraud in violation of 18 U.S.C. § 1344 charged in Counts II-IV. As for evidence that Defendant entered into an agreement with at least one other person, Ramirez, 350 F.3d at 783, as discussed in detail above, the Government presented ample evidence that Defendant directed and managed a bank fraud scheme from the Jennings Correctional Facility with the assistance of Brown, Carter, Lumpy, and others. This evidence, and the reasonable inferences that arise from it, established beyond a reasonable doubt that Defendant was not only a member of a conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, but further, was directing and managing the conspiracy. For these reasons, the Court finds Defendant **GUILTY** on Count I of the Indictment.

## COUNT V – AGGRAVATED IDENTITY THEFT (18 U.S.C. § 1028A)

28. 18 U.S.C. § 1028A provides that a person who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person" in relation to one of the crimes enumerated in 18 U.S.C. § 1028A(c) shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of two years. 18 U.S.C. § 1028A(a)(1).

29. For purposes of this statute, the term "means of identification" means "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." 18 U.S.C. § 1028(d)(7).

30. Under the knowledge requirement, the Government must prove the accused knew that the "means of identification" belonged to another person; an accused unaware that the means of identification refers to a real person cannot be guilty of that offense. See U.S. v. Retana, 641 F.3d 272, 274 (8th Cir. 2011) (citing Flores-Figueroa v. United States, 129 S. Ct. 1886, 1894

8

(2009)); see also United States v. Foster, 740 F.3d 1202, 1207 (8th Cir. 2014) ("Knowledge of existence is enough; the accused need not know the individual personally.").

31. Thus, in order to convict Defendant on Count V, the Government was required to prove beyond a reasonable doubt that (1) Defendant knowingly transferred, possessed, or used a means of identification of another person without legal authority; (2) Defendant knew the means of identification belonged to a real person; and (3) Defendant did so in relation to the crime of bank fraud as charged. 18 U.S.C. § 1028A(a)(1).

32. Brown testified at trial that at Defendant's direction, she obtained three checks from an individual called "Lumpy"; the name of Dyanthony Owens was on each of the checks. Tr. 41:9-18. Brown filled out the check as instructed by Defendant, making it payable to herself in the amount of $600.00. Tr. 42:19-43:2; 47:21-48:5; 49:18-25; Ex. 1.02. She forged the signature of Owens on the check, Tr. 43:1-2, 48:13-49:7; 49:24-50:1, and deposited it into her Bank of America account Tr. 42:20-21; Ex. 1.00 at 24, 25; Ex. 1.02; Ex. 8.00 at Jail Call 393.

33. Brown testified she never met a person by the name of Dyanthony Owens and never had a conversation with anyone who identified himself as Dyanthony Owens and gave her permission to sign his name. Tr. 43:3-8. Brown indicated she did not know if Dyanthony Owens was a real or fictitious person Tr. 62:13-19.

34. Dyanthony Owens testified he does not know either Defendant or Brown. Tr. 16:10-11; 17:12-19; 19:1-2.

35. The Court concludes that the Government met its burden of proving that Defendant, with the assistance of Brown and others, used Dyanthony Owens' means of identification without legal authority and that the use was in relation to the crime of bank fraud as charged. 18 U.S.C. § 1028A(a)(1).

9

36.    With respect to the knowledge element of the offense, however, the Court concludes that the evidence adduced at trial was insufficient to establish beyond a reasonable doubt that Defendant knew the means of identification on the check was associated with a real person. While the Government is correct that this element can be proven with circumstantial evidence, the Supreme Court explained in Flores-Figueroa that it may be more difficult to prove knowledge without evidence that the accused acquired the means of identity under circumstances that, standing alone, suggest the accused knew the means of identity belonged to a real person. 129 S. Ct. at 1893. The Supreme Court also gave a few examples of circumstances where "intent is generally not difficult to prove," i.e., where a defendant has used another person's identification information to get access to that person's bank account, or gone through someone else's trash to find discarded credit card and bank statements, or pretends to be from the victim's bank and requests personal identifying information. Id. Unlike in those circumstances, where the offender would clearly know that the means of identification identifies a different real person, here, Defendant enlisted the assistance of "Lumpy" to meet Brown at a gas station and provide her with some checks. The Government has presented no direct evidence and insufficient circumstantial evidence that would support an inference that Defendant knew the checks belonged to a real person. Under the facts as presented, it is just as likely as not that Defendant thought the checks were counterfeits.

37.    Because the Government has not proven each element of the offense of aggravated identity theft, the Court finds Defendant **NOT GUILTY** on Count 5 of the Indictment.

## CONCLUSION

10

For these reasons and the reasons set forth more fully on the record, the Court concludes that the Government has established beyond a reasonable doubt that Defendant committed each element of each of Counts 1 through 4 as charged in the Indictment. As for Count 5, the Court concludes that the Government failed to establish beyond a reasonable doubt that Defendant knew that the "means of identification" belonged to "another person."

Accordingly,

**IT IS HEREBY ORDERED** that the Court finds Defendant Pierre Watson **GUILTY BEYOND A REASONABLE DOUBT** on each of Counts 1 through 4 of the Indictment.

**IT IS FURTHER ORDERED** that the Court finds Defendant Pierre Watson **NOT GUILTY** on Count 5 of the Indictment.

Dated this 21st day of August, 2017.

_____

**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**